IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 14-cv-01660-RBJ

DIANE RENEE COOPER,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

ORDER

This matter is before the Court on review of the Commissioner's decision denying plaintiff Diane Renee Cooper's application for disability insurance benefits pursuant to Title II of the Social Security Act. Jurisdiction is proper under 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

This appeal is based upon the administrative record and briefs submitted by the parties. In reviewing a final decision by the Commissioner, the role of the district court is to examine the record and determine whether it "contains substantial evidence to support the [Commissioner's] decision and whether the [Commissioner] applied the correct legal standards." *Rickets v. Apfel*, 16 F.Supp.2d 1280, 1287 (D. Colo. 1998). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010) (citations omitted). Evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

The Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Harper v. Colvin*, 528 F. App'x 887, 890 (10th Cir. 2013) (unpublished) (citations omitted). Thus, although some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court might "have made a different choice had the matter been before it de novo." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). However, the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (citations omitted).

Upon review, the district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 45 U.S.C. § 405(g).

## PROCEDURAL HISTORY

Ms. Cooper applied for disability insurance benefits on or around November 24, 2010. She claimed inability to work since her alleged onset date of January 22, 2002 due to fibromyalgia, migraines, chronic fatigue, chronic neck and back pain, limited mobility in left shoulder and arm, sleep disorder (unable to sleep more than four hours a night), tingling in both feet, irritable bowel syndrome, and numbness in hands and arms. R. 147–48, 306. Ms. Cooper's date last insured (DLI) was December 31, 2007. The Commissioner denied Ms. Cooper's application on May 26, 2011. Ms. Cooper requested a hearing before an administrative law judge (ALJ), and the ALJ conducted a video hearing on April 3, 2013. On June 25, 2013 ALJ Beverly Susler Parkhurst issued an opinion denying benefits. The Appeals Council denied Ms.

Cooper's request for review on April 14, 2014. Thereafter, Ms. Cooper filed a timely appeal with this Court.

## DENIAL OF THE CLAIM

To qualify for disability insurance benefits, an individual must (a) meet the insured status requirements of the Social Security Act (the "Act"); (b) not have attained retirement age; (c) file an application; and (d) be under a "disability" as defined in the Act. 42 U.S.C § 423(a)(1). Disability is defined as being unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C § 423(d)(1)(A). The claimant carries the burden of establishing that she was disabled prior to her date last insured. *See Flaherty*, 515 F.3d at 1069.

The Social Security Administration uses a five-part process to determine whether a claimant qualifies for disability insurance benefits. 20 CFR § 404.1520. At **step one** the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 CFR § 404.1520(a)(4)(i). The ALJ found that Ms. Cooper had not engaged in substantial gainful activity during the period from her alleged onset date of January 22, 2002 through her DLI of December 31, 2007. R. 23.

At **step two** the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that are "severe." 20 CFR § 404.1520(a)(4)(ii). The ALJ found that Ms. Cooper suffered from the following severe impairments through December 31, 2007: myofascial pain syndrome/fibromyalgia, migraines, degenerative changes of the lumbar spine, irritable bowel syndrome, and inflammatory arthritis. R. 23. The ALJ also found that Ms. Cooper suffered from one non-severe impairment: seizures.

They were found to be non-severe because there was no evidence of chronic reoccurrence with treatment. *Id.*

At **step three** the ALJ must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). 20 CFR § 404.1520(a)(4)(iii). The ALJ determined that none of Ms. Cooper's impairments – alone or in combination – met or medically equaled one of the impairments in the Listings. R. 23–24.

Before reaching step four, the ALJ is required to determine the claimant's residual functional capacity ("RFC"). *See* R. 16; 20 CFR § 404.1520(a)(4)(iv). An RFC represents "the most [a claimant] can still do despite [her] limitations." 20 CFR § 404.1545(a)(1). The RFC is "the claimant's maximum sustained work capability." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). The ALJ found that Ms. Cooper has an RFC to perform sedentary work as defined in 20 CFR § 404.1567(a) with the following limitations: the claimant can occasionally lift 10 pounds and can frequently lift up to 10 pounds; can stand and walk for two hours out of an 8-hour workday; can sit for six hours out of an 8-hour workday; can frequently balance; and can occasionally climb, twist, stoop, crawl, crouch, and kneel. R. 24.

At **step four** the ALJ must determine whether the claimant has the residual functional capacity to perform the requirements of her past work. 20 CFR § 404.1520(a)(4)(iv). The ALJ found that Ms. Cooper could perform her past relevant work as an administrative assistant and as a bookkeeper. R. 34. In turn, the ALJ found that the claimant was not under a disability as defined by the Social Security Act at any time from January 22, 2002 through December 31, 2007. Pursuant to this finding, the ALJ did not progress to **step 5**.

## ANALYSIS

Ms. Cooper contends that the ALJ erred by (1) improperly giving no weight to the opinions of three of her treating physicians and (2) failing to properly evaluate her credibility. Upon reading her brief, it appears that Ms. Cooper is attempting to collaterally attack the evidentiary basis for the ALJ's finding of no disability. The Court, however, cannot substitute its judgment for that of the ALJ. For the reasons set out below, the Court finds that the finding of no disability is supported by substantial evidence in the record and that the ALJ's decision suffers from no errors of law justifying remand or reversal. The decision of the Commissioner is therefore affirmed.

### Treating Source Opinions

Ms. Cooper argues that the ALJ erred in her evaluation of the treating medical source opinions. In particular, Ms. Cooper contends that the ALJ improperly failed to give controlling weight to the opinions of her rheumatologist, Dr. Spencer; her treating physician, Dr. Snyder; and another treating physician, Dr. Schroeder.

"[I]n evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). "The initial determination the ALJ must make with respect to a treating physician's medical opinion is whether it is conclusive, i.e., is to be accorded 'controlling weight,' on the matter to which it relates." *Id.* (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)). The opinion must be given controlling weight if "it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id.* (citing *Watkins*, 350 F.3d at 1300; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)). If the opinion is deficient in either of these respects, it should not receive controlling weight. *Id.*

There is an exception to this rule.  A medical source opinion is **never** entitled to controlling weight or special significance insofar as it provides an opinion on issues reserved to the Commissioner, including opinions on the claimant's residual functional capacity and whether the claimant is disabled.  Social Security Rulings ("SSR") 96-5p, 1996 WL 374183, at *1 (July 2, 1996).[1]  "Giving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." *Id.* at *2.  Nevertheless, "adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner." *Id.*  If the record contains an opinion on an issue reserved to the Commissioner, "the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." *Id.* at *3.

Ms. Cooper does not challenge the evaluation of the medical opinions contained in her treatment records but instead focuses on the ALJ's consideration of three medical impairment questionnaires opining on her residual functional capacity and disability status.  Because the challenge goes to opinions on issues reserved to the Commissioner, the ALJ was not entitled to give the opinions controlling weight.  Instead, the ALJ was required to evaluate all of the evidence in the record to determine the extent to which the opinions were supported by the record.  The ALJ did just that.

Upon conducting a thorough review of the medical evidence in the record, including the opinions found within the impairment questionnaires, the ALJ found that the evidence

---

[1] Social Security Rulings "are binding on all components of the Social Security Administration."  20 C.F.R. § 402.35(b)(1).  The rulings represent "precedent final opinions and orders and statements of policy and interpretations that [the Commissioner has] adopted." *Id.*  They are to be relied upon as precedents in adjudicating cases.  *See* Social Security Rulings: Preface, *available at* http://ssa.gov/OP_Home/rulings/rulings-pref.html.

"demonstrates that while the claimant experienced severe impairments, the claimant's limitations prior to her date last insured were simply not disabling. The largely normal observations summarized above indicate that the claimant's pain waxed and waned and that she retained a nearly normal functional capacity despite her frequent complaints of pain." R. 31. After making this determination, the ALJ reviewed each impairment questionnaire independently, giving additional reasons why they were entitled to no weight. R. 32. Notably, the ALJ was under no obligation to recite the same objective medical evidence discussed earlier. *See Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012) (unpublished). Yet this seems to be the crux of the plaintiff's argument: her brief focuses solely on the reasons given in this section without first reviewing the more fully developed analysis found immediately prior.

Dr. Spencer

In discounting Dr. Spencer's RFC, ALJ Parkhurst found that it was somewhat inconsistent with a previous disability opinion he had rendered; that it included more severe limitations than even Ms. Cooper reported; and that it was not supported by his underlying treatment notes. R. 32. While the first reason for discounting the opinion is not the strongest, the second two sufficiently support the ALJ's finding that the RFC was entitled to no weight.

As discussed by the ALJ, Dr. Spencer's records indicate that Ms. Cooper was managing her pain well with treatment. *See generally* R. 606–39. With respect to her fibromyalgia and chronic myofascial pain syndrome, the treatment notes reflect that while Ms. Cooper's pain would wax and wane from flare ups, it was fairly moderate and manageable overall. *See* R. 638 (noting "marked improvement" with pain from medication regimen in June 2002); R. 634 (reporting improvement in symptoms with pain levels averaging 4–5/10 in April 2004); R. 631 (average pain level had gone from 7/10 to 3/10 in October 2004); R. 629 (noting "fairly

7

adequately controlled pain level on current medication" in March 2005); R. 628 (fairly manageable pain with an average pain level of 4–5/10 in November 2005); R. 626 (average daily pain of 3/10 in June 2006); R. 622 ("fairly low level of discomfort" from fibromyalgia in January 2007); R. 617 (reporting that Ms. Cooper had an ongoing modest degree of discomfort in January 2008, just after DLI); R. 608 (indicating that in spite of a flare up, Ms. Cooper's pain remained "much improved since initiation of gabapentin" – which she began taking in August 2008 – in March 2009).  Notably, in June 2006 Ms. Cooper informed Dr. Spencer that her pain levels decreased the more physically active she remained.  R. 626.

All of Ms. Cooper's other impairments, such as migraines and back pain, seem to have been well controlled by medication.  *See generally* R. 606–39.  Furthermore, Ms. Cooper demonstrated no significant joint tenderness and well-preserved range of motion in all joints. The only two visits where Ms. Cooper demonstrated joint swelling and tenderness were in June 2007 and September 2009.  R. 606, 620.  With respect to the June 2007 visit, by October 2007 her tenderness and swelling had subsided in response to steroid treatment.  R. 618.

Moving on to the plaintiff's own reports, Ms. Cooper has been caring for her ailing, elderly stepfather[2] since as early as June 2006 and continuing at least through the date of the hearing.  *See* R. 59–60, 618, 626.  On some unknown date he moved in with her.  It is unclear exactly what tasks Ms. Cooper manages on his behalf.  However she assists him with his oxygen and seems to care for him at times when there is no additional help.  *See* R. 60, 64.  Ms. Cooper testified that he has a nurse that comes once a week, a man from social services who checks in once a week, and a Chaplain who visits once a month.  R. 60.  Ms. Cooper also reports daily activities of getting herself ready, preparing food, and cleaning (including vacuuming).  R. 63,

---

[2] It is unclear from the record whether this person was a neighbor Ms. Cooper referred to as a father, or whether he actually was her stepfather.  The Court refers to him as her stepfather for ease of reference.

316. She also drives anywhere from 45–60 minutes to the grocery store about once a month. R. 65. Finally, up until 2011 Ms. Cooper was riding horses regularly. *See* R. 70, 318; *see also* R. 542–48 (indicating that Ms. Cooper sought treatment for a fall from her horse in February 2010); R. 759–62 (reporting to the doctor for an injury sustained when a horse stepped on her foot in August 2011).

In spite of the objective evidence on file, Dr. Spencer completed a medical questionnaire in January 2011 in which he indicated a severely restrictive residual functional capacity for Ms. Cooper. R. 665–72. According to his report, this level of disability dates back to at least December 2007, though likely to 2004. R. 673. First, Dr. Spencer indicated that Ms. Cooper typically experienced pain ranging from 7–8/10. R. 667. The treatment notes detailed above paint a different picture. Dr. Spencer also opined that as of December 2007 Ms. Cooper could only sit for 2–3 hours and stand/walk for 0–1 hours in an 8-hour workday; that she could never lift or carry more than 10 pounds; that she had significant limitations in doing repetitive reaching, handling, fingering, and lifting; that she experienced moderate difficulty in grasping, turning, and twisting objects and in using fingers/hands for fine manipulation; and that she experienced marked difficulty in using her arms for reaching. R. 668–69. Again, the treatment records and Ms. Cooper's reported activities – including daily care for an elderly, sick man and regular horseback riding – do not support these opinions. Finally, Dr. Spencer opined that Ms. Cooper could not maintain full-time work in the competitive job market and that she was capable of functioning only in a low-stress work environment. R. 670. The evidence, however, simply does not support this level of disability. The ALJ did not err in affording the opinion no weight.

Dr. Snyder

The ALJ likewise found that Dr. Snyder's RFC was entitled to no weight because it was not supported by the underlying treatment notes. Dr. Snyder's RFC was even more limiting than Dr. Spencer's. *Compare* R. 786–93 *with* R. 665–72. In particular, Dr. Snyder limited Ms. Cooper to sitting no more than 1 hour and standing/walking no more than 0–1 hours in an 8-hour workday and never lifting or carrying more than 5 pounds. R. 788–89. Dr. Snyder also indicated that Ms. Cooper suffered from marked limitations in the use of all of her upper extremities. R. 789–80. Dr. Snyder opined that Ms. Cooper could not maintain a full-time job in the competitive job market and that she was incapable of tolerating even a low stress work environment. R. 791. According to Dr. Snyder, Ms. Cooper had suffered from this level of disability since approximately 2000. R. 786, 792.

Notably, Dr. Snyder only began seeing Ms. Cooper in March 2011 – over three years after her DLI had passed – and in 2000 Ms. Cooper was still engaged in substantial gainful activity. Both of these factors would have given me pause if I had been reviewing the RFC for the first time. Still, the ALJ did not discount Dr. Snyder's opinion for either of these reasons. Instead she engaged with the objective evidence and treatment notes, finding that they did not support the RFC. Considering that this RFC was even more restrictive than the last one, the Court need not review the medical evidence once again.

<u>Dr. Schroeder</u>

Finally, the ALJ explained that she could give no weight to the RFC of Dr. Schroeder because the claimant failed to submit any underlying treatment records he had prepared. In turn there were no records with which to evaluate the RFC. *Id.* Ms. Cooper faults the ALJ for failing to adequately develop the record, arguing that she had a duty to seek treatment notes from Dr. Schroeder. The testimony from the hearing tells a different story.

Before the hearing began, ALJ Parkhurst asked plaintiff's counsel whether he was aware of any documents that were not part of the file that may be relevant to the case. R. 51. Counsel discussed some missing treatment records from Dr. Ratner, a different treating physician, and no one else. R. 52. Soon after, the ALJ explicitly asked about Dr. Schroeder's treatment records, explaining that she could only find his impairment questionnaire. R. 57. Plaintiff's counsel could not locate any treatment notes in his file, and when the ALJ asked how she was meant to evaluate the conclusions without those notes counsel indicated that they were "very similar to the other two multiple-impairment questionnaires that we have in the file." R. 58. The ALJ responded, "I can't – I have to see what the treatment notes are, so I don't have them, I don't have them." *Id.* Counsel acknowledged her statement but never asked to supplement the record after the hearing. He likewise never attempted to submit the treatment notes at any time before the decision issued.

"Although the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record—indeed, to exhort the ALJ that the case is ready for decision—and later fault the ALJ for not performing a more exhaustive investigation." *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008). Here, plaintiff's counsel was made personally aware of the missing files by the ALJ. The ALJ also indicated that she could not review the medical questionnaire without supporting treatment records. In spite of this notice, plaintiff's counsel never asked for leave to supplement the record nor did he indicate that he would submit the files after the hearing. The ALJ performed her duty to develop the record – she asked plaintiff's counsel about the missing treatment notes – and she was met by seeming indifference.

Plaintiff's counsel eventually did supplement the record with Dr. Schroeder's treatment notes, on August 29, 2013.[3] R. 99–129. The Appeals Council reviewed the medical files and found that because the treatment notes significantly post-dated Ms. Cooper's DLI – ranging from September 19, 2012 through March 25, 2013 – they were not relevant to the outcome of the decision. R. 2. Ms. Cooper has not challenged this determination, thus waiving any argument that the ALJ's failure to consider this evidence was prejudicial to the outcome of her case. Suffice to say, Dr. Schroeder's RFC is even more restrictive than the previous two already discussed. *Compare* R. 877–84 *with* R. 665–72; R. 786–93. Therefore, even if it had been reviewed, the medical evidence in the record would not have supported it.

Proper Narrative

Finally, Ms. Cooper makes a blanket allegation that a proper narrative statement was not provided in support of the ALJ's RFC assessment. The Court disagrees. The Social Security Rulings state that

> [t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8P, 1996 WL 374184, at *7 (July 2, 1996) (footnote omitted). ALJ Parkhurst delivered a ten-page long narrative of the medical and non-medical evidence in support of her RFC assessment. R. 24–34. This discussion was more thorough, nuanced, and detailed than most I have reviewed. Ms. Cooper complains that the ALJ failed to identify any medical evidence

---

[3] The Commissioner's claims to the contrary are unfounded. *See* [ECF No. 12 at 16]. The notes have been a part of the record throughout this appeal.

consistent with a finding of sedentary work, the least rigorous category available. The Court disagrees and refers Ms. Cooper to the evidence outlined above as well as the more thorough discussion found within the decision itself. Any argument that Ms. Cooper was unable to perform sedentary work during the relevant time period was essentially found to be not credible.

**Credibility Assessment**

Ms. Cooper contends that the ALJ's credibility determination was not supported by substantial evidence in the record. The Court disagrees. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005). However, these determinations "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.*

The ALJ found that Ms. Cooper's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of the symptoms were "not entirely credible for the reasons explained in this decision."[4] R. 29. The ALJ then discussed the medical records, demonstrating in great detail how both the objective evaluations and Ms. Cooper's reported complaints of pain did not lend support to her claims of disabling limitations. R. 30–33. The ALJ considered Ms. Cooper's reports of daily activities and found that they likewise did not support her claim of total disability. R. 33. Beyond managing her household needs, Ms. Cooper reported caring for her ailing father and regularly riding horses during the relevant time period. The Court agrees that

---

[4] I appreciate the reasoned approach taken with respect to Ms. Cooper's credibility assessment. In the past I have been troubled with the predominant use of such boilerplate language as "the intensity, persistence, and limiting effects of the symptoms are not credible to the extent they are inconsistent with the above residual function assessment." *See Kaighn v. Colvin*, 13 F. Supp. 3d 1161, 1173 (2014). It is clear not only through the language used but also the assessment made that ALJ Parkhurst carefully considered Ms. Cooper's subjective complaints before determining her residual functional capacity.

these final two reports are "surely contradictory to [Ms. Cooper's] allegations of total disability and tend to indicate that the claimant retained a greater physical functional capacity than alleged." R. 34.

The plaintiff argues that the ALJ's analysis misses the mark, that it fails to focus on her fibromyalgia, a condition that causes "widespread pain in all four quadrants of the body and at least 11 of the 18 specific tender points on the body." [ECF No. 11 at 19] (internal quotation marks and citation omitted). The Court disagrees. Ms. Cooper's reports of pain improvement following medical treatment alongside her engagement in active and challenging activities support the ALJ's determination that the plaintiff is not entirely credible when she describes disabling limitations due to pain.

## CONCLUSION

The Court has reviewed the record and finds that the ALJ's well-reasoned and thorough decision is supported by substantial evidence. There are likewise no errors of law demanding remand or reversal. The decision is therefore affirmed.

## ORDER

The decision of the Commissioner is AFFIRMED.

DATED this 16th day of March, 2015.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge